# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MARK FITZHENRY, individually and on behalf of a class of all persons and entities similarly situated,<br><br>   Plaintiff<br><br>vs.<br><br>THE INDEPENDENT ORDER OF FORESTERS, THAD MICHAEL SIPPLE and SAVANT INSURANCE SOLUTIONS<br><br>   Defendants | Case No. 2:14-cv-03690-DCN<br><br>CLASS ACTION COMPLAINT |

## CLASS ACTION COMPLAINT

### Preliminary Statement

The Plaintiff Mark Fitzhenry ("Plaintiff") individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of his counsel, and on information and belief as follows:

### NATURE OF ACTION

1. This case involves a scheme by Defendant The Independent Order of Foresters ("Foresters") (by and through their agent co-defendant Savant Insurance Solutions) to market their services through use of pre-recorded messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

2. As described more fully below, the defendant insurance companies have issued a high volume of insurance quotes – and made substantial sales of products and services – derived through illegal telemarketing calls placed by defendant Savant Insurance Solutions ("Savant").

3. Plaintiff bring this action for statutory damages and injunctive relief under the TCPA, all arising from the illegal actions of the Defendants.

4. Foresters both delegated its marketing duties to Savant and ratified the conduct of Savant by accepting the referrals and sales generated by Savant's calls on behalf of Foresters. Foresters also actively participated in the telemarketing calls through the actions of its agents.

5. Together, these Defendants contacted, and/or caused to be contacted on their behalf, Plaintiff and Class Members without their prior express written consent within the meaning of the TCPA.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

8. This Court has personal jurisdiction over The Independent Order of Foresters because, as the companies are licensed to and do conduct the business of insurance in the State of South Carolina, they have established minimum contacts showing they purposefully availed themselves to the resources and protection of the State of South Carolina.

9. This Court has personal jurisdiction over Savant because the conduct at issue in this case occurred, among other locations, in South Carolina.

10. This Court has personal jurisdiction over Defendant Sipple because his conduct at issue in this case occurred, among other locations, in South Carolina, including his involvement in the pre-recorded telemarketing calls to the Plaintiff. This Court also has personal jurisdiction over Mr. Sipple because:

    a. He is a 100% owner of Savant Insurance Solutions;
    b. He had direct participation in the telemarketing calls that are the subject of this lawsuit;
    c. He is subject to personal liability as described below.

11. Venue is proper in the United States District Court for the District of South Carolina because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction, as the Plaintiff received the illegal telemarketing calls that are the subject of this lawsuit in this District. *See* 28 U.S.C. § 1391.

## PARTIES

12. Plaintiff Mark Fitzhenry is, and at all times mentioned herein was, an individual citizen of the State of South Carolina, who resides in this District.

13. Defendant The Independent Order of Foresters is a fraternal benefits society that is headquartered in Toronto, Canada, and provides insurance services to companies in the United Sates, Canada and the United Kingdom. Its principal place of business is 789 Don Mills Rd., Toronto, Ontario, Canada M3C 1T9.

14. Defendant Savant Insurance Solutions is an insurance agency based out of Rocklin, CA that promotes the goods and services of Foresters through telemarketing.

15. Defendant Thad Michael Sipple is the owner and operator of Savant Insurance Solutions. He is a Rocklin, California resident.

16. At all times material to this complaint, Mr. Sipple owned, controlled, or was a corporate officer of Savant Insurance Solutions, and directed its telemarketing practices.

17. Mr. Sipple is also individually liable for the telemarketing campaign that is the subject of this complaint pursuant to 47 U.S.C. § 217, which states:

> In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

18. Mr. Sipple directly committed the wrongful acts contained in this Complaint.

19. Mr. Sipple also authorized the telemarketing campaign performed on behalf of Foresters.

20. Mr. Sipple also uses his own voice for the pre-recorded messages he sends.

## **THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227**

21. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

22. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
> . . . .
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.
>
> *Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

- 4 -

23. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *Id.* (specifically recognizing "on behalf of" liability in the context of a an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)).

24. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

25. Savant made the autodialed and prerecorded message calls described herein "on behalf of" Foresters within the meaning of the 2008 FCC Declaratory Ruling.

26. On May 9, 2013, the FCC released a Declaratory Ruling reaffirming that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[1]

27. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 F.C.C.R. at 6586 (¶ 34).

28. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at n.107.

---

[1] In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al., CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

29.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 F.C.C.R. at 6592 (¶ 46).

30.     Foresters are legally responsible for ensuring that Savant complied with the TCPA, even if Foresters did not themselves make the calls.

31.     Foresters knew that the Savant was alleged to have violated the TCPA on Foresters' behalf and failed to take effective steps within their power to force the telemarketer to cease that conduct.

32.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**FACTUAL ALLEGATIONS RELATING TO THE PLAINTIFF'S CALL**

33. Plaintiff Fitzhenry is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

34. On June 17, 2014, Plaintiff received a telephone call to his telephone.

35. When the phone was answered, a pre-recorded message played, that pre-recorded message was automated and stated

> Hello, this is a benefit information update regarding a new state-approved funeral insurance program that is now available in your state. The state-approved and state-regulated funeral insurance program will pay up to $35,000 tax-free for your burial and final expenses with no health questions and no waiting period. To receive this information, please press the 1 key on your phone now. To be added to our no-calls list, press 9 now, but for more information, please press the 1 key now.

36. When Plaintiff spoke with a representative, that representative informed the Plaintiff that he was calling from the company Savant Insurance Solutions, and gave a call back number of (866) 434-8181, which is the number that Savant Insurance Solutions has registered with the South Carolina Department of Insurance. *See* https://online.doi.sc.gov/Eng/Public/Queries/IndvdlDemogrphLicInfo.aspx?txtIndividualNbr=578955 (Last Visited September 15, 2014).

37. Savant Insurance Solutions is owned and operated by Thad Michael Sipple.

38. Mr. Sipple personally called Mr. Fitzhenry and informed him that the call was being made promoting Fosters insurance.

39. Plaintiff did not provide prior express written consent to receive the pre-recorded phone call, and has not done business with either of the defendants.

**The Defendants' Marketing Scheme**

40. Foresters relies on a series of third parties ("Foresters agents") to promote its goods or services.

41. In fact, if an individual wanted to purchase Foresters products, the Foresters website advises"

> You can purchase Foresters quality insurance products through a network of independent life insurance agents. Our sales and marketing staff will be happy to recommend a friendly insurance agent in your area who can assist you.
>
> If you are not a Foresters member and are interested in purchasing a Foresters product, please fill out the form below to have an Agent contact you.

*See* http://www.foresters.com/us-en/tools/contact-us/Pages/new-to foresters.aspx#.VBd9A_ldXpw (Last Visited September 15, 2014).

42. Foresters maintain interim control over its agents' actions, both as to telemarketing and other activities.

43. Foresters maintains the right to control the content of their agents' advertising.

44. An example of how Foresters maintains the right to control their agents advertising is by:

   a. Forester's auditors have the right to review, monitor or oversee any activity related to the business of soliciting insurance applications for them.

   b. Foresters also requires its agents to maintain an insurance policy insuring Foresters for the actions of the agents.

45. Foresters exercised all of these rights during the course of their relationship with Savant and Mr. Sipple.

### **Vicarious Liability Under the FCC's Order**

46. The Federal Communication Commission concurs that sellers such as Foresters may not avoid liability by outsourcing telemarketing:

> Allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly

>be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers(or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349, ¶ 37 (FCC May 9, 2013) (internal citations omitted).

47. Under the standards outlined in the FCC's order and by other Courts interpreting that Order, Foresters is liable to the Plaintiff under the following theories:

    a.    Direct Liability
    b.    Actual Authority
    c.    Ratification
    d.    Apparent Authority

Each is discussed below.

### **Direct Liability**

48. Foresters actively participated in the telemarketing calls that are the subject of this case.

49. The call to the Plaintiff is an example of how.  Although Savant made the call and took the Plaintiff's information, Foresters itself participated in the call by issuing a quote for insurance.

50. Mr. Fitzhenry then received a quote from Foresters. The quote:

    a.    Was sent from the e-mail address "mobile@foresters.com"
    b.    Foresters.com is owned and operated by the Defendant Foresters;
    c.    Described the Foresters PlanRight insurance plan;
    d.    Used the trade name and trademark of Foresters;
    e.    Informed the recipient that the "benefit(s) shown in this document are subject to the terms and conditions of the applicable Foresters product";

    f. Left contact information (address and phone number) for Foresters directly if the recipient had any questions about the offer.

  51. Had the Plaintiff accepted that quote, Foresters would have sold insurance products and services to him.

  52. It is the purpose of a call, rather than what is said, that matters for TCPA liability. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012).

  53. Each call that Savant placed, regardless of how "far" the call recipient permitted the sales pitch to go, was intended by all parties involved to result in sales of Foresters' products and services.

  54. Defendant Foresters issued quotations for insurance wholly derived from Savant's calls, including the one to the Plaintiff.

  55. Foresters also issued insurance policies to persons who accepted such quotations.

**<u>Actual Authority</u>**

  56. With regard to torts committed by an agent, tort committed by an agent, the Restatement of Agency provides:

> § 7.04 Agent Acts With Actual Authority
>
> A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and
>
> (1) the agent's conduct is tortious, or
>
> (2) the agent's conduct, if that of the principal, would subject the principal to tort liability.

*See* RESTATEMENT (THIRD) OF AGENCY § 7.04 cmt. d(2) (2006).

  57. The purpose of Foresters' agents is to serve Foresters by soliciting applications for insurance from consumers on behalf of Foresters.

58. Indeed, Savant did this through the pre-recorded telemarketing alleged in this Complaint.

59. Foresters also directed the quality, timing, geographic location and volume of Savant's applicants that it sent to them.

**Ratification**

60. In the alternative, Foresters repeatedly ratified Savant's illegal marketing scheme by knowingly accepting the benefits of Savant's activities when they accepted applications and customers from them.

61. Since at least April of 2013, Foresters has been on notice of the pre-recorded telemarketing Savant was using to generate customers for Foresters.

62. Upon information and belief, Foresters and their agents were aware of Savant's marketing scheme before April of 2013 and that Savant was making calls using an "artificial or prerecorded voice" to generate customers for Foresters.

63. More than fourteen months after receiving knowledge of the illegal telemarketing campaign, Foresters continued to allow Savant to telemarket its goods and services.

64. In participating in these calls (through the issuance of quotes), Foresters manifested an intent to accept the benefit of Savant's calling campaigns; including calls that were made by Savant on its behalf but that did not result in an insurance quote.

65. Because it accepted the calls' benefits from Savant, including continued customers, Foresters cannot avoid the burden associated with their ratification.

66. Vicarious liability for TCPA violations can arise out of ratification. As the FCC stated:

> Restatement (Third) of Agency § 2.03, cmt. c. As commonly understood under modern agency principles reflected in the Third Restatement, such apparent authority can arise in multiple ways, and does *not* require that "a principal's manifestation must be directed to a specific third party in a communication made directly to that person. *Id.*, reporter's note a. Rather, "a principal may create apparent authority by appointing a person to a particular position." *Id.* Similarly, "a principal may permit an agent to acquire a reputation of authority in an area or endeavor by acquiescing in conduct by the agent under circumstances likely to lead to a reputation." *Id.*, cmt. c. And "[r]estrictions on an agent's authority that are known only to the principal and the agent do not defeat or supersede the consequences of apparent authority for the principal's legal relations" with others." *Id.* In such circumstances, for example, the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability.

*In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349 *16, ¶ 34, fn 102.

67. Foresters knowingly and actively accepted business that originated through the illegal telemarketing calls complained of herein.

68. The benefits of the relationship Foresters requested from the FCC must be accompanied by the burden.[2]

**Apparent Authority**

69. Foresters gave their agents, including Savant, substantial power to affect their legal relations with third parties, including Plaintiff and consumers generally.

---

[2] The FCC also emphasized in its Order that due to the behind-the-scenes nature of relationships between sellers and telemarketers, Courts should consider affording TCPA Plaintiff discovery to establish the basis for vicarious liability for a call which on its face promotes the seller's products or service: "At a minimum, evidence of these kinds of relationships—which consumers may acquire through discovery, if they are not independently privy to such information— should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349 * 15, ¶ 46 (FCC May 9, 2013). This complaint has been drafted without the benefit of discovery from Foresters.

70. Foresters cloaked their agents with apparent authority to enter into advertising arrangements on their behalf, including lead generation telemarketing which the Plaintiff received.

71. Savant transferred customer information, including the Plaintiff' information, directly to Foresters. Thus, Savant has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. Savant is an apparent agent of Foresters.

72. By hiring Savant to make calls on behalf of its agents to generate sales leads, Foresters "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

73. Savant knew that its calls were resulting in actual quotes for, and sales of, Foresters' insurance.

74. These quotes and sales were being performed by Foresters themselves.

## CLASS ACTION ALLEGATIONS

75. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

76. Plaintiff bring this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

77. Plaintiff propose the following Class definition, subject to amendment as appropriate:

> All persons within the United States who received a non-emergency telephone call from Savant or Mr. Sipple, placed while acting on behalf of Foresters, through the use of an artificial or prerecorded voice within the four years prior to the filing of the Complaint in this action.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Class.

78. Excluded from the Class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

79. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believe Class members number, at minimum, in the thousands.

80. Plaintiff and all members of the Class have been harmed by the acts of the Defendants.

81. This Class Action Complaint seeks injunctive relief and money damages.

82. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

83. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

84. Further, the Class can be identified easily through records maintained by Foresters and/or their telemarketing agents.

85. There are well defined, nearly identical, questions of law and fact affecting all parties.

86. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

87. Such common questions of law and fact include, but are not limited to, the following:

      a.      Whether Savant and Mr. Sipple, acting on behalf of Foresters, used an artificial or prerecorded voice in its non-emergency calls to Class members' telephones.

      b.      Whether the Defendants can meet their burden of showing they obtained consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such calls;

      c.      Whether the Defendants' conduct was knowing and/or willful;

      d.      Whether the Defendants are liable for statutory damages; and

      e.      Whether the Defendants should be enjoined from engaging in such conduct in the future.

88.     Plaintiff will fairly and adequately represent and protect the interests of the Class.

89.     Further, Plaintiff has no interests which are antagonistic to any member of the Class.

90.     Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

91.     A class action is the superior method for the fair and efficient adjudication of this controversy.

92.     Class wide relief is essential to compel the Defendants to comply with the TCPA.

93.     The interest of the Class members in individually pursuing claims against the Defendants is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter the Defendants from engaging in the same behavior in the future.

94.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class

members, by definition, did not provide the prior express consent required under the statute to authorize such calls to their cellular telephones.

95.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

96.     Moreover, on information and belief, Plaintiff allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

## FIRST COUNT

## STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ*.

**(Against all Defendants)**

97.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

98.     The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

99.     As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

100.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

101. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.

### (Against all Defendants)

102. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

103. The foregoing acts and omissions of the Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

104. As a result of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

105. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendants in the future.

106. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendants:

A. Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

      B.      As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b), Plaintiff seek for themselves and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA, to be paid jointly and severally by the Defendants as a group;

      C.      As a result of Defendants' statutory violations of 47 U.S.C. § 227(b), Plaintiff seek for themselves and each Class member $500 in statutory damages for each and every call that violated the TCPA, to be paid jointly and severally by the Defendants as a whole;

      D.      An award of attorneys' fees and costs to counsel for Plaintiff and the Class, to be paid jointly and severally by the Defendants as a whole;

      E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff are a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

      F.      Such other relief as the Court deems just and proper.

Dated:  September 18, 2014

                                          _/s/ Lance S. Boozer_____
                                          Lance S. Boozer (Fed ID# 10418) (SC Bar#75803)


**PLAINTIFF'S COUNSEL:**

Lance S. Boozer
The Boozer Law Firm, LLC
807 Gervais Street, Suite 203
Columbia, SC 29201
803-608-5543
lsb@boozerlawfirm.com

Edward A. Broderick
Anthony Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com
*Subject to Pro Hac Vice*

Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net
*Subject to Pro Hac Vice*