# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| MARK FITZHENRY, *individually and on behalf of a class of all persons and entities similarly situated*, )<br>)<br>)<br>) | |
| Plaintiff, )<br>) | No. 2:14-cv-3690-DCN |
| v. )<br>) | **ORDER** |
| THE INDEPENDENT ORDER OF FORESTERS and THAD MICHAEL SIPPLE, )<br>)<br>)<br>) | |
| Defendants. )<br>) | |

This matter is before the court on a motion for judgment on the pleadings filed by defendant Independent Order of Foresters ("Foresters")[1] and a motion for judgment on the pleadings filed by defendant Thad Michael Sipple ("Sipple"). For the reasons set forth below, the court grants both motions.

## I. BACKGROUND

Plaintiff Mark Fitzhenry ("Fitzhenry") alleges that on June 17, 2014, he received a telephone call in which the following prerecorded message was played:

> Hello, this is a benefit information update regarding a new state-approved funeral insurance program that is now available in your state. The state-approved and state-regulated funeral insurance program will pay up to $35,000 tax-free for your burial and final expenses with no health questions and no waiting period. To receive this information, please press the 1 key on your phone now. To be added to our no-calls list, press 9 now, but for more information, please press the 1 key now.

Compl. ¶¶ 34–35.

---

[1] Although Foresters labels its motion as a motion to dismiss, the court refers to it as a motion for judgment on the pleadings since it was filed pursuant to Federal Rule of Civil Procedure 12(c).

1

When Fitzhenry spoke with a representative, the representative informed him that he was calling from the company Savant Insurance Solutions. Id. ¶ 36. Sipple owns and operates Savant Insurance Solutions. Id. ¶ 37. Sipple later called Fitzhenry and informed him that the call was being made to promote Foresters. Id. ¶ 38. Fitzhenry alleges that he had neither provided express written consent to receive the call nor done business with any of the defendants. Id. ¶ 39.

On September 18, 2014, Fitzhenry filed this action alleging violations of the Telephone Consumer Protection Act ("TCPA"). On January 13, 2015, Foresters filed a motion for judgment on the pleadings. The next day, Sipple also filed a motion for judgment on the pleadings. Fitzhenry responded to both motions on February 9, 2015. Foresters and Sipple each filed a reply on February 20, 2015. These matters have been fully briefed and are ripe for the court's review.

## II.  STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Courts follow "a fairly restrictive standard" in ruling on 12(c) motions, as "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." 5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2011). Ultimately, "a defendant may not prevail on a motion for judgment on the pleadings if there are pleadings that, if proved, would permit recovery for the plaintiff." BET Plant Servs., Inc. v. W.D. Robinson Elec. Co., 941 F. Supp. 54, 55 (D.S.C. 1996).

"[A] Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." Deutsche Bank Nat'l Trust Co. v. I.R.S., 361 F. App'x 527, 529 (4th Cir. 2010); see also Burbach Broad. Co. v. Elkins Radio, 278 F.3d 401, 405 (4th Cir. 2002). Thus, in order to survive a motion for judgment on the pleadings, the complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). In reviewing the complaint, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

### III.  DISCUSSION

Defendants argue that they are entitled to judgment on the pleadings because Foresters is a nonprofit organization exempt from the TCPA.[2] Foresters' Mot. 5.

Title 47 U.S.C. § 227(b)(1)(B) makes it unlawful for a person to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communications Commission ("FCC")] under paragraph (2)(B)." The TCPA provides a private right of action for any violation of this provision and permits the recovery of the

---

[2] Sipple's motion for judgment on the pleadings essentially adopts Foresters' motion. Therefore, the court focuses on Foresters' motion.

greater of $500 or actual losses, with the potential for treble damages if a court determines that the violation was wilful. Id. § 227(b)(3). In enacting the TCPA, Congress provided that the FCC may exempt certain calls—including "calls that are not made for a commercial purpose"—from the requirements of § 227(b)(1)(B). Id. § 227(b)(2)(B). In response, the FCC issued a regulation which created several exceptions to the prohibition on making prerecorded calls to residential lines, including an exemption for calls "not made for a commercial purpose" and calls "made by or on behalf of a tax-exempt nonprofit organization." 47 C.F.R. § 64.1200(a)(3)(ii), (iv).

Fitzhenry does not dispute that Foresters is a tax-exempt nonprofit organization. In his complaint, Fitzhenry acknowledges that Foresters is a "fraternal benefits society" headquartered in Canada and providing insurance services to companies in the United States, Canada, and the United Kingdom. Compl. ¶ 13. A fraternal benefit association is "[a] voluntary organization or society created for its members' mutual aid and benefit rather than for profit, the members having dedicated themselves to a common and worthy cause, objective, or interest." Black's Law Dictionary (10th ed. 2014). The Internal Revenue Code grants tax-exempt status to

> Fraternal beneficiary societies, orders, or associations—
> (A) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and
> (B) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents.

26 U.S.C.A. § 501(c)(8). Further, Foresters attaches to its motion a spreadsheet published by the IRS listing Foresters as a tax-exempt nonprofit organization. Foresters' Mot. Ex. B; see Sec'y of State for Defense v. Trimble Navigation Ltd., 484 F.3d 700, 705

(4th Cir. 2007) (holding that in considering a motion to dismiss, a court may take judicial notice of matters of public record).

The only question before the court is whether the call Fitzhenry received falls within the exception for calls made by or on behalf of a tax-exempt nonprofit organization. Fitzhenry contends that "the FCC has been clear that if a tax exempt non-profit is engaging in commercial pre-recorded telemarketing, it can be held liable."[3] Pl.'s Resp. 3. Foresters, on the other hand, asserts that "the exemption as worded and as intended by the FCC applies to any telephone call that furthers the interests of a tax-exempt nonprofit organization, regardless of whether the call attempts to solicit donations or the purchase of goods and services of that organization." Foresters' Reply 2.

As an initial matter, the plain language of the regulation seems to apply to any automated call made by a tax-exempt nonprofit:

> No person or entity may . . . [i]nitiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, <u>unless the call . . . [i]s made by or on behalf of a tax-exempt nonprofit organization</u>.

47 C.F.R. § 64.1200(a)(3)(iv) (emphasis added). The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992) (citations omitted). "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." Id. (citation and internal

---

[3] Notably, Fitzhenry does not argue that the court should invalidate the nonprofit exemption. Such an argument would raise serious issues under the Hobbs Act, which grants the courts of appeals the "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the [FCC]." 28 U.S.C. § 2342(1); 47 U.S.C. § 402. "Whichever way it is done, to ask the district court to decide whether the regulations are valid violates [the Hobbs Act]." United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 463 (8th Cir. 2000).

quotation marks omitted). The Fourth Circuit has explained that, "[i]n the same way, [the] interpretation of regulations begins with their text." Gilbert v. Residential Funding LLC, 678 F.3d 271, 276 (4th Cir. 2012).

The exemption at issue here contains no language of limitation indicating that it is only applicable to non-commercial calls. It does not distinguish between calls made on behalf of nonprofits based on the substance of the call. It simply indicates that calls made "by or on behalf of a tax-exempt nonprofit organization" are exempt. 47 C.F.R. § 64.1200(a)(3)(iv). Therefore, under the plain and unambiguous terms of the regulation, the call at issue here did not violate the TCPA.

While the plain text of the regulation provides sufficient grounds to grant defendants' motions for judgment on the pleadings, additional considerations bolster this conclusion. First, under Fitzhenry's reading—which limits the nonprofit exemption to non-commercial calls—the nonprofit exemption would be superfluous because 47 C.F.R. § 64.1200(a)(3)(ii) already exempts calls "not made for a commercial purpose." "In interpreting statutes and regulations, [courts] have a duty, where possible, to give effect to all operative portions of the enacted language, including its every clause and word." Shipbuilders Council of Am. v. U.S. Coast Guard, 578 F.3d 234, 244 (4th Cir. 2009) (citation and internal quotation marks omitted). "[C]onstructions which render regulatory provisions superfluous are to be avoided." Black & Decker Corp. v. C.I.R., 986 F.2d 60, 65 (4th Cir. 1993).

Moreover, the FCC has indicated that calls made by or on behalf of tax-exempt nonprofits are, by their very nature, non-commercial:

> The legislative history of the TCPA contrasts calls made by tax-exempt nonprofit organizations with commercial calls and indicates that

6

>commercial calls have by far produced the greatest number of complaints about unwanted calls. . . . Accordingly, based on the comments and the legislative history of TCPA, <u>we conclude that tax-exempt nonprofit organizations should be exempt from the prohibition on prerecorded message calls to residences as non-commercial calls</u>.

<u>In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 7 F.C.C.R. 8752, 8773–74 (1992) (emphasis added).

A 2003 FCC report and order confirms this reading, determining that "calls made by a for-profit telemarketer hired to solicit the <u>purchase of goods or services</u> or donations on behalf of a tax-exempt nonprofit organization are exempted from the rules on telephone solicitation." <u>In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 18 F.C.C.R. 14014, 14089 (2003) ("the 2003 FCC order") (emphasis added). The 2003 FCC order addresses the exact issue presented here. Fitzhenry alleges that "a for-profit entity (Savant Insurance, run by Thad Michael Sipple)" placed a call "on behalf of Foresters" in order to "promote its goods or services." Pl.'s Resp. 6; Compl. ¶ 40. The 2003 FCC order clearly provides that the exemption applies to calls made by a for-profit entity to solicit the purchase of goods or services on behalf of a tax-exempt nonprofit organization.[4]

Because FCC regulations exempt the call at issue in this case, the court grants defendants' motions for judgment on the pleadings.

---

[4] The 2003 FCC order did recognize some situations which would not fall within the exception because a nonprofit only tangentially benefits from the call:

>A call to sell debt consolidation services, for example, is a commercial call regardless of whether the consumer is also referred to a tax-exempt nonprofit organization for counseling services. Similarly, a seller that calls to advertise a product and states that a portion of the proceeds will go to a charitable cause or to help find missing children must still comply with the TCPA rules on commercial calls.

2003 FCC Order, 18 F.C.C.R. at 14089–90. This case does not involve such a situation.

## IV.  CONCLUSION

Based on the foregoing, the court **GRANTS** Foresters' motion for judgment on the pleadings and **GRANTS** Sipple's motion for judgment on the pleadings. Additionally, the court finds each defendant's motion for protective order **MOOT**.

**AND IT IS SO ORDERED**.

 

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 15, 2015**
**Charleston, South Carolina**